UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KATHERINE MCRAE and
QUINTEN PARKER                                                                              PLAINTIFFS

V.                                                            CIVIL ACTION NO. 3:24-CV-786-DPJ-ASH

CONNECTDIRECT ONLINE, INC., et al.                                                   DEFENDANTS

ORDER

Plaintiffs allege fraud and other wrongdoing by a Florida corporation and two individuals—Terry Owen and Steve Gatt. They seek a temporary restraining order freezing Defendants' assets and other relief. The motion [5] is denied without prejudice because Plaintiffs have not yet demonstrated the Court's personal jurisdiction or a basis for the broad injunctive relief they seek.

I.    Background

Plaintiffs say they were invited by Defendants to promote investments in ConnectDirect Online, Inc. ("CDO") in exchange for a 1% equity share in the corporation. Compl. [1] ¶¶ 15–16. Plaintiffs performed their end of the bargain, but CDO did not. *Id*. ¶¶ 18–19. On December 10, 2024, Plaintiffs sued and obtained summonses for the three Defendants. Defendants say Owen is CDO's Chief Executive Officer, "sole board member, and majority shareholder," while Gatt is "only a shareholder." Defs.' Mem. [11] at 2.

After emailing a courtesy copy of the Complaint to Defendants' counsel, Gear Email [6-5], Plaintiffs encountered considerable difficulty perfecting personal service on Defendants, *see* Returns [6-6]. They then moved for a TRO seeking extensive relief: freezing Defendants' assets, forbidding them to transfer or dissipate funds, enjoining them "from making corporate decisions that affect Plaintiffs' rights without prior Court approval," prohibiting spoliation or

concealment of assets and evidence, expediting discovery, and appointing a third-party receiver for CDO's assets. Pls.' Mot. [5] at 1–2. Plaintiffs also ask the Court to declare sufficient service of process on all Defendants given their actual notice and their efforts to avoid service. *Id*. at 3.

After Plaintiffs filed their motion, Defendants made special appearances to contest it. Defs.' Resp. [10]; Defs.' Mem. [11]. Defendants question the Court's jurisdiction and the appropriateness of injunctive relief in what they describe as a routine contract dispute for which monetary damages are available. The motion is now fully briefed, so the Court will treat it as one for preliminary injunction. *See Dilworth v. Riner*, 343 F.2d 226, 229 (5th Cir. 1965) (noting that when court hears from both parties the TRO motion is "in substance and result" one for preliminary injunction). Finally, Plaintiffs have now perfected service on Defendant CDO. Neither Owen nor Gatt has been served.

II.     Discussion

    A.     Personal Jurisdiction

Defendants say the Court "must have both subject matter jurisdiction *and personal jurisdiction* over the party against whom a . . . preliminary injunction is requested." Defs.' Mem. [11] at 3 (emphasis in original) (citing *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470 (5th Cir. 1985)). That's true. "[T]he question of jurisdiction is always vital. A court must have jurisdiction as a prerequisite to the exercise of discretion." *Enter. Int'l*, 762 F.2d at 471 (quoting *Eighth Reg'l War Labor Bd. v. Humble Oil & Ref. Co.*, 145 F.2d 462, 464 (5th Cir. 1944)). Here, jurisdiction must exist as to each Defendant because Plaintiffs seek injunctive relief as to each. *See Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 112 F.4th 284, 294 (5th Cir. 2024) (holding that injunctions "can stand only if the court has *in personam* jurisdiction over the enjoined defendant").

2

Defendants argue that Plaintiffs cannot meet their burden for two primary reasons. First, they suggest that jurisdiction cannot exist until they are served. Second, they deny sufficient minimum contacts to create personal jurisdiction in Mississippi.

Starting with service of process, CDO has now been served, but Owen and Gatt have not. Defendants suggest, with no analysis, that the lack of service means no personal jurisdiction exists. *See* Defs.' Mem. [11] at 1 n.1. They do, however, cite *Enterprise* to make a different point in another part of their brief. *Id.* at 3. That court observed:

> Fed. R. Civ. P. 65 determines only the method of seeking and obtaining any sort of an injunction, and has no bearing on either the jurisdiction to exercise, or the propriety of exercising, the injunctive power. Because Rule 65 confers no jurisdiction, the district court must have both subject matter jurisdiction and in personam jurisdiction over the party against whom the injunction runs, and, when that party is the defendant, this implies either voluntary appearance by him or effective service of process.

*Enter. Int'l Inc.*, 762 F.2d at 470 (quotation marks and citation omitted).

*Enterprise* might suggest service is required before ordering a preliminary injunction, but the Fifth Circuit rejected that interpretation in *Whirlpool Corp. v. Shenzhen Sanlida Electric Technical Co.*, 80 F.4th 536 (5th Cir. 2023). The *Whirlpool* court distinguished *Enterprise* because the *Enterprise* defendant had "argued that the district court would *never* have personal jurisdiction over it" under the Foreign Sovereign Immunities Act. *Id.* at 543 (emphasis in original). By contrast, the *Whirlpool* defendant acknowledged jurisdiction if the plaintiff perfected service. *Id.* Under those circumstances, the Fifth Circuit reaffirmed that "'Rule 65(a) does not require service of process,' but rather requires 'notice to the adverse party.'" *Id.* at 542 (quoting *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302 (5th Cir. 1978)). As such, Plaintiffs' inability to personally serve Owen and Gatt does not impede the Court's authority to issue an injunction if personal jurisdiction would otherwise exist.

3

And that leads to Defendants' next argument—that they "have no contact with the State of Mississippi sufficient to confer jurisdiction over them." Defs.' Mem. [11] at 1 n.1. In that context, the plaintiff must "adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits." *Enter. Int'l*, 762 F.2d at 471 (quoting *Visual Scis., Inc. v. Integrated Commc'ns Inc.*, 660 F.2d 56, 59 (2d Cir. 1981)); *accord Whirlpool Corp.*, 80 F.4th at 543.[1]

Minimum contacts with the forum state can create either general or specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). General jurisdiction includes "instances in which the continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).

Specific jurisdiction recognizes that "'single or occasional acts' in a State may be sufficient to render a corporation answerable in that State with respect to those acts, though not with respect to matters unrelated to the forum connections." *Id.* (quoting *Int'l Shoe*, 326 U.S. at 318). The test for specific personal jurisdiction is well known:

> "A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum

---

[1] In *Kwik-Kopy Corp. v. Byers*, the court held that the Rule 12(b)(2) standard applies when a defendant seeks dismissal while a preliminary-injunction motion is pending. 37 F. App'x 90, at *3 (5th Cir. 2002). When courts decide personal jurisdiction under Rule 12(b)(2) without an evidentiary hearing, the plaintiff must merely present "a prima facie case for personal jurisdiction." *Id. Kwik-Kopy* is unpublished and is bracketed by *Enterprise* and *Whirlpool*—two published opinions that reach a different conclusion when there is no pending motion to dismiss. But assuming *Kwik-Kopy* applied, it would not change the results of this motion. Plaintiffs have not met their burden under Rule 12(b)(2), under which the court "accept[s] as true 'plaintiff's uncontroverted, nonconclusional factual allegations' and 'resolve[s] all controverted allegations in the plaintiff's favor.'" *Savoie v. Pritchard*, 122 F.4th 185, 190 (5th Cir. 2024) (quoting *Def. Distrib. v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020)).

>state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." . . . "Where the plaintiff alleges specific jurisdiction, as here, due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable."

*Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (citations in footnotes omitted).

Plaintiffs' efforts to meet this test are minimal. To be fair, Defendants didn't spend much time on the subject either, but jurisdiction is not optional, and the burden rests with Plaintiffs to prove it exists. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 211 (5th Cir. 2016). Plaintiffs first offer this footnote:

>Defendants purposefully directed their activities at Mississippi by soliciting Plaintiffs' services, relying on their contributions performed in Mississippi, and engaging in bad faith conduct—such as withholding promised equity, concealing profits, and destroying evidence—that caused harm to Plaintiffs in Mississippi. These actions establish sufficient minimum contacts under the *International Shoe* framework, as Plaintiffs' claims arise out of Defendants' purposeful activities connected to Mississippi. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Pls.' Reply Mem. [14] at 2 n.1. They later mention affidavits from two non-parties stating that they witnessed Defendants make promises to McRae (a Mississippi resident) through calls, emails, and meetings. *Id.* at 11. There is no additional analysis.

This is too conclusory to meet Plaintiffs' burden. To begin, Plaintiffs never say whether their "minimum contacts" argument pursues general or specific personal jurisdiction, and they never examine those tests. It seems unlikely they meant general jurisdiction given their assertions. Assuming they intended specific personal jurisdiction, their footnote, Complaint, and supporting affidavits offer no specifics about what each Defendant did in Mississippi. For example, the Court does not know where the alleged meetings occurred. It could have been

5

Mississippi (where McRae resides), North Carolina (where Parker resides), Florida (where CDO has its principal place of business and Owens resides), Arizona (where Gatt resides), or someplace else. *See* Compl. [1] ¶¶ 7–11. Nor have Plaintiffs shown things like where the alleged destruction of evidence occurred or where the work was intended to be performed.

And even if Defendants did solicit Plaintiffs in Mississippi, contract with a Mississippi resident (McRae), communicate with her in Mississippi, and "cause[] harm to Plaintiffs in Mississippi," Pls.' Reply Mem. [14] at 2 n.1, they offer no legal analysis suggesting that this would be enough. It may not be. For example, all those things happened in *Holt Oil & Gas Corp. v. Harvey*, yet the Fifth Circuit "conclude[d] that these limited contacts were insufficient to support an exercise of specific jurisdiction. On several occasions this Court has observed that merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." 801 F.2d 773, 778 (5th Cir. 1986) (collecting cases).

To be clear, the Court makes no final ruling on jurisdiction. Nor has it exhaustively researched binding authority; the available facts are too limited for that task. With more facts, Plaintiffs might distinguish *Holt Oil* and the many cases like it—indeed they must to remain in this Court. But conclusory allegations are insufficient. *Savoie*, 122 F.4th at 190. And because the Court cannot yet say whether personal jurisdiction exits, it cannot grant Plaintiffs' requested relief. *Enter. Int'l*, 762 F.2d at 471 (reversing when district court deferred jurisdictional ruling and granted injunctive relief).

That dispositive ruling makes it tempting to stop here. But Plaintiffs' arguments—though insufficient—give the Court some pause about what is happening. And because denial based on

jurisdiction is without prejudice, Plaintiffs might try again. In the interest of judicial economy and fairness, the Court therefore flags potential issues that would need to be addressed.[2]

B.   Security

Under Rule 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Plaintiffs have neither posted security nor sought to do so; they ask instead that the Court waive the requirement or limit it to a nominal amount. Pls.' Mem. [6] at 26–27.

Courts do have discretion to waive this requirement. *Corrigan Dispatch Co.*, 569 F.2d at 303. But that's more typical when, for instance, the injunction aids a plaintiff in "vindicating constitutional rights" and there is no prospect of material harm. *Thomas v. Varnado*, 511 F. Supp. 3d 761, 766 n.1 (E.D. La. 2020) (citation omitted); *see Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 n.20 (5th Cir. 1996) (affirming injunction where no bond posted and the injunction could "only work to avoid damages, not cause them").

This case seeks money, but Plaintiffs discount any risk to Defendants from an improperly granted injunction, arguing that the potential damages to Defendants "are negligible." Pls.' Mem. [6] at 26. Defendants predictably disagree, noting that Plaintiffs want a complete freeze on "all bank accounts and financial assets held by Defendants." Defs.' Mem. [11] at 10 (quoting Pls.' Mem. [6] at 28). *See* Pls.' Mot. [5] at 1. And Plaintiffs also want an order enjoining Defendants from "making corporate decisions that affect Plaintiffs' rights without prior Court

---

[2] The Court has no desire to pick at nits, but some of the issues were underdeveloped because Plaintiffs saved their legal analysis and most evidence for reply. While the Court considered everything this time, it was not required to consider items that should have been included in the opening memorandum. *See Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008).

approval." Pls.' Mot. [5] at 2. According to Defendants, this relief "will effectively destroy the company or substantially hinder or eliminate its ability to remain a going concern." Defs.' Mem. [11] at 12.

Defendants' arguments make sense, and Plaintiffs have never explained why the impact would be negligible. Plaintiffs understandably believe their right to recover trumps any resulting harm. *See* Pls.' Mem. [6] at 26. But they seek an exception to the security requirement without explaining why CDO would not be harmed if the Court froze its assets and forced it to seek approval for its business decisions. Also, Plaintiffs would have the Court freeze not only CDO's assets but "all Defendants' financial assets, including bank accounts." Pls.' Mot. [5] at 1. Freezing the individual Defendants' personal bank accounts might cause foreseeable harm.[3]

Before considering a request to waive security under these circumstances, the Court would want to see some legal authority supporting it. *See, e.g.*, *In re 2920 ER, L.L.C.*, 607 F. App'x 349, 356 (5th Cir. 2015) (vacating prejudgment equitable remedies because, among other things, plaintiff did not post bond). To date, Plaintiffs have cited no such cases. Again, the Court is not foreclosing Plaintiffs' argument.

C. Irreparable Harm

A movant seeking preliminary injunction under Rule 65 "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Miss. Power & Light*

---

[3] This also underscores why it is important to establish each Defendant's contacts with Mississippi and the Court's personal jurisdiction over them.

*Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (holding all four factors must be met).

Whether to grant injunctive relief "is within the sound discretion of the district court." *Id*. The movant bears the entire "heavy burden" of making a "clear showing" as to all four factors. *Hill ex rel. Hill v. Greene Cnty. Sch. Dist.*, 848 F. Supp. 697, 704 (S.D. Miss. 1994); *Winter*, 555 U.S. at 22. Its evidence need not meet a summary-judgment standard, and the Court may consider otherwise inadmissible evidence such as hearsay. *Purl v. U.S. Dep't of Health & Hum. Servs.*, No. 2:24-CV-228, 2024 WL 5202497, at *6 (N.D. Tex. Dec. 22, 2024); *June Med. Servs. LLC v. Kliebert*, 158 F. Supp. 3d 473, 494 n.30 (M.D. La. 2016). But speculation is not enough. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).

Most of the relief Plaintiffs seek relates to their fear that Defendants are wasting corporate assets. But their attempt to show imminent and irreparable harm relies heavily on speculation. Their opening brief, for instance, included no meaningful evidence and no legal analysis. In their reply, they more specifically identify their basis for showing irreparable injury and attempted to support it with four affidavits.[4]

According to Plaintiffs, harm is imminent and irreparable because: (1) Defendants failed to distribute revenues to shareholders though required by contract to do so; (2) there is no guarantee California will renew Defendants' most lucrative contract; (3) Defendants breached fiduciary duties, acted in bad faith, concealed financial data, and mismanaged the corporation; and (4) Defendant Gatt deliberately destroyed evidence.

---

[4] The parties offer competing cases addressing whether the Court can enter a preliminary injunction to preserve a possible judgment. *Compare* Defs.' Mem. [11] at 9–10 *with* Pls.' Reply Mem. [14] at 8, 16. If this issue reappears, they should distinguish each other's cited authority.

*Failure to distribute revenues:* Plaintiffs offer two affidavits stating that shareholders have not received distributions despite the corporation's massive success. Berry Aff. [14-1] ¶ 7; Matis Aff. [14-2] ¶ 3. They then argue that the "failure to pay dividends, despite their clear contractual obligations under the Seed Equity Offer Agreement, underscores the imminent and irreparable harm caused by their ongoing financial mismanagement." Pls.' Reply Mem. [14] at 8. In other words, the failure to pay dividends "strongly indicates severe financial instability—if they were not struggling, they would honor their obligations." *Id.*

That speculation aside, Plaintiffs neither provide the Seed Equity Offer Agreement nor quote the contract language they say Defendants "blatant[ly] breach[ed]." *Id.* While the rules of evidence do not apply to this motion, the Court cannot tell whether a breach occurred without knowing what the contract said. Put simply, it remains unclear whether dividends were required.

Plaintiffs also seem unsure whether CDO has made a lot of money and failed to pay its shareholders or lost a lot of money due to mismanagement or fraud. *Compare* Pls.' Mem. [6] at 4 (arguing Defendants generated "extraordinary revenue and profits, yet no payouts have been made") *with* Compl. [1] ¶ 20 (alleging that Defendants "inflated" CDO's value). Plaintiffs are, of course, allowed to plead alternative theories. But they can't speculate. And neither theory means Defendants "used these funds for unauthorized purposes" as Plaintiffs argue. Pls.' Reply Mem. [14] at 6.

*No guarantee California will not renew:* None of Plaintiffs' affiants mention non-renewal of the California contract. And arguing that renewal is "not guaranteed" is too speculative to demonstrate imminent and irreparable harm.

*Defendants' bad faith, breaches of fiduciary duties, mismanagement, and concealment:* Plaintiffs' arguments in this section overlap their argument that Defendants failed to pay

dividends to shareholders. *See, e.g.*, Pls.' Reply Mem. [14] at 8 (arguing that failure to pay dividends "underscores" harm caused by financial mismanagement). But Plaintiffs also say Defendants acted in bad faith when they failed to honor the oral contract with Plaintiffs. *See* Pls.' Mem. [6] at 3. Even assuming they prove a breach, that does not prove Defendants are wasting corporate assets. It might just mean they don't want to share them.

As for concealment, two shareholders claim they have unsuccessfully tried to obtain an accounting from the corporation. *See* Berry Aff. [14-1] ¶ 5; Matis Aff. [14-2] ¶ 7. This could be a red flag. But the affidavits only vaguely describe the alleged efforts and resulting concealment, and Plaintiffs offer no legal analysis suggesting whether the shareholders had a right to whatever they may have requested. Assuming Florida law applies—neither party says—a shareholder's right to inspect is not unlimited. *See, e.g.*, Fl St. § 607.1602(3).[5]

*Intentional destruction of evidence:*  Parker says, "*After filing my lawsuit* against CDO, Mr. Gatt deliberately deleted my business and personal emails, which contained critical information regarding my equity interest and contributions to CDO." Parker Aff. [14-4] ¶ 15 (emphasis added). It's unclear how Gatt deleted emails on Parker's devices (if that is what Parker alleges). But the alleged destruction must have occurred *before* Parker and McRae filed this suit because their Complaint makes that same claim. *See* Compl. [1] ¶¶ 19(e), 27, 77, 140, 141, 146. Maybe these seemingly inconsistent statements can be reconciled. In any event, assuming Gatt has engaged in unethical litigation tactics, that does not prove Defendants are wasting assets or intend to do so.

---

[5] Plaintiffs' motion included a letter from their counsel indicating that he was "scheduled to inspect corporate records . . . on Friday, December 13, 2024." Letter [6-4] at 2. The letter seeks additional information before the inspection, but it is unclear what happened next.

11

And to the extent that Plaintiffs seek an injunction against further destruction of evidence, other protections are already in place. For example, if Defendants have truly committed fraud—as alleged—then destroying evidence could constitute obstruction of justice and lead to enhancements under Federal Sentencing Guideline § 3C1.1. There would also be consequences here. Spoliation is "addressed in federal courts through the inherent power to regulate the litigation process if the conduct occurs before a case is filed or if, for another reason, there is no statute or rule that adequately addresses the conduct." *Rimkus Consulting Grp, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 611 (S.D. Tex. Feb. 19, 2010) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991)).

In sum, Plaintiffs say the "[e]vidence strongly suggests that Defendants are misappropriating corporate funds for unauthorized or personal purposes." Pls.' Mem. [6] at 19. But clearly demonstrating irreparable injury is a heavy burden to overcome. *Enter. Int'l*, 762 F.2d at 472. Plaintiffs' expressed "fears" about the alleged "risks" are not enough. *See, e.g.*, McRae Aff. [14-3] ¶¶ 17–18. "There must be a likelihood that irreparable harm will occur. Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed.). And here, there are no non-conclusory facts showing that funds have been or will be misappropriated for "unauthorized or personal purposes." Pls.' Mem. [6] at 19; *cf. Janvey v. Alguire*, 647 F.3d 585, 601 (5th Cir. 2011) (finding "evidence of a massive Ponzi scheme and proof that each individual received proceeds from the fraudulent scheme" was "more than mere speculation").[6]

---

[6] Given the other issues, the Court will not go through each remaining element for injunctive relief. But the parties will need to better address the likelihood of success if Plaintiffs again seek preliminary relief. For example, Plaintiffs argue that oral agreements are enforceable under

D.   Expedited Discovery

Expedited discovery would not require the same showing required for injunctive relief. But such issues are handled by the assigned United States Magistrate Judge. Plaintiffs may seek that relief in a separate motion.

E.   Service of Process

As noted, Plaintiffs have presented evidence suggesting Defendants evaded personal service, though CDO has now been served. The Court looks with disfavor on such conduct, but Plaintiffs cite no authority empowering the Court to simply declare that emailing Defendants' attorney a copy of the Complaint is sufficient. They cite the Supreme Court's *Mullane* decision, but the Court's remarks about adequacy of notice concerned whether due process was satisfied; there was no issue whether the state law on service of process had been followed. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 310, 314 (1950). In any event, "[t]he defendant's actual notice of the litigation . . . is not sufficient to satisfy Rule 4's requirements." *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir. 1988).

Nor do Plaintiffs offer authority for their other request—that the Court allow alternative methods of service. When Rule 4 intends to allow alternative service, it says so. *See, e.g.*, Fed. R. Civ. P. 4(f)(3) (allowing service by leave of court "by other means" on individual in foreign country). There is no comparable provision in Rule 4(f)(3) for domestic service.

---

Mississippi law. *See* Pls.' Reply Mem. [14] at 5 (citing *Short v. Columbus Rubber and Gasket Co.*, 535 So. 2d 61, 64 (Miss. 1988)). That can be true, but there's more to it. "Mississippi's statute of frauds provides that oral contracts 'not to be performed' within fifteen months are unenforceable." *Culpepper Enters. Inc. v. Parker*, 270 So. 3d 116, 126 (Miss. Ct. App. 2018) (quoting Miss. Code Ann. § 15-3-1(d) (Rev. 2012)). Plaintiffs offer no facts about the *specifics* of the oral agreements or their expected duration. Plaintiffs also say the contracts were later confirmed in writing. Pls.' Reply Mem. [14] at 6. But those writings do not appear to be in the record. The Court will need to see the writings, and Plaintiffs will need to provide legal analysis about their impact.

Even with discretion to allow alternative means (or simply declare service complete), the Court would not exercise it here because Plaintiffs have not utilized all available methods. For example, Defendants say they emailed Plaintiffs' counsel and "offered to waive service under Fed. R. Civ. P. 4 for each of the Defendants." Defs.' Mem. [11] at 14. They also say Plaintiffs' counsel refused their offer. *Id.* Plaintiffs reply that "none [of Defendants' attorneys] have agreed to accept service of process." Pls.' Reply Mem. [14] at 1. The parties' statements seem inconsistent, but there is no way to tell who is right because Defendants failed to attach the emails they referenced. Either way, Defendants have now made a judicial admission that they are willing to waive service. And there are other means for service under state law that Plaintiffs have not tried. *See* Fed. R. Civ. P. 4(e)(1) (allowing service under state law); *see also* Ariz. R. Civ. P. 4.1(*l*)(1)(A); Fl. Sts. §§ 48.161 & 48.181. With available avenues for service on the two remaining Defendants, the Court will not grant the requested relief.[7]

IV.   Conclusion

The Court has considered all arguments presented. Any not specifically addressed here would not change the outcome. Plaintiffs' motion [5] is denied without prejudice.

**SO ORDERED AND ADJUDGED** this the 13th day of February, 2025.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[7] Since Rule 4(m) allows 90 days after suing to serve a defendant, Plaintiffs have nearly a month left in which to try additional methods of service.